**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| RICKEY EAVING TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00163-CDP |
| | ) | |
| ANDREW SKINNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the application of self-represented plaintiff Rickey Eaving Tucker, an inmate at Boonville Correctional Center, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $44.91. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based on a review of the complaint, the Court will allow plaintiff to file an amended complaint within twenty-one days of the date of this Order.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to

the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted a certified copy of his prison account statement for the time period of March 5, 2023 to September 5, 2023. Based on this statement, the Court finds that plaintiff has an average monthly deposit of $224.55. As a result, the Court will require plaintiff to pay an initial partial filing fee of $44.91, which is 20 percent of his average monthly deposit. 28 U.S.C. § 1915(b)(2).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a compliant filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679.

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

**The Complaint**

Plaintiff brings this action on a court-provided prisoner civil complaint form for filing claims pursuant to 42 U.S.C. § 1983. He names as defendants Robyn Merideth (Lieutenant, Scott County Sheriff's Department); Andrew Skinner (Deputy, Scott County Sheriff's Department); Michael Yaworski, (Scott County Sheriff's Department); Hunter Juden (Deputy, Scott County Sheriff's Department); Zack Stevens (Deputy, Scott County Sheriff's Department); and Chris Skinner (Correctional Officer, Scott County Sheriff's Department). He sues defendants Robyn Merideth and Andrew Skinner in their official capacities only and does not specify in what capacity he sues the remaining defendants.

Plaintiff states that while he was in the custody of the Scott County Sheriff's Department, he was tased more than sixty times, punched, kicked, and hit with police batons. He states that his teeth were knocked out, he was cut with pliers, his suffered severe tears to his chest muscles and rotary cuff, his elbow bones were chipped, his feet were stomped, and his fingers, wrist, neck, and back were injured. He was taken to Sikeston Hospital and received MRIs, but he states he has not received adequate medical care. Plaintiff does not allege the date when any of these things happened.

Plaintiff's allegations are specific to each defendant. First, he says defendant Andrew Skinner tased him more than twenty times, punched him repeatedly in the face, knocked his teeth out, kicked him, hit him with a police baton, pulled his handcuffed arms up his back and to his head, which tore his chest muscles, rotary cuff, and arm ligaments.

As to defendant Hunter Juden, plaintiff states Juden tased him repeatedly in the pod, tased him while handcuffed, strapped him to a restraint chair, and continued to tase him. As to defendant Zack Stevens, plaintiff states Stevens tased plaintiff and watched as the other defendants tased and beat plaintiff. Plaintiff alleges Stevens had a chest camera on, but turned it off after he was

threatened by his fellow officers. Plaintiff states that Stevens was terminated two weeks after this incident.

Plaintiff identifies Correctional Officer Chris Skinner as the brother of defendant Andrew Skinner. Plaintiff states Chris Skinner hit him, tore his arm, chest, and rotary cuff, and "they shot me in the head neck." Sergeant Michael Yaworski accompanied plaintiff to the hospital with more taser cartridges. While at the hospital, plaintiff had two MRIs on his back. He states that Sikeston Hospital knew he was hurt badly, "but didn't give me not so much as a Tylenol. All [the officers'] wives work there and [they were] able to get me in and out."

As to Lieutenant Robyn Meredith, plaintiff states that he wrote up plaintiff's charges, which included two class B felonies for dangerous contraband, armed criminal action, four second degree assaults on law enforcement, and resisting arrest. Plaintiff alleges these charges were filed to cover up the other officers' assault on him. Plaintiff states Meredith was showing the video of plaintiff's beating to all of the surrounding police officers. Plaintiff states the video shows that he did not assault any officers. After the assault, plaintiff was kept on lock down for twenty days.

On pages fourteen and fifteen of the complaint, plaintiff starts each sentence with "Scott County makes it policy and custom to . . . ." He finishes these statements with conclusory statements like "to use excessive force on inmates," "to conspire to use excessive force on inmates," "to use Tasers on inmates while inmates are handcuffed," "to use Tasers on inmates while they are restrained in the restraint chair," "to hurt inmates for sport and viewing entertainment," "to deny medical after tasing and beating their prisoner," "to trump charges so people [have] to go to prison," "to hurt and maim and even kill its prisoners who know [they] are the victims of cop on inmate violence," "to put inmates in prison for long prison sentences." These statements are conclusory and plaintiff does not cite to an official policy or allege any facts from which the Court could find a custom.

Plaintiff has left incomplete Part IV of the form, which asks what relief plaintiff seeks from the Court.

## Discussion

Although plaintiff's complaint alleges severe beatings in the Scott County Jail, it is subject to dismissal because he has sued defendants in their official capacities only. For defendants Robyn Merideth and Andrew Skinner, plaintiff has checked the box on the form indicating that his is suing them in their official capacities. As to the remaining defendants, because plaintiff is silent as to the capacities in which he sues them, the Court must assume that he is suing them only in their official capacities. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (stating that if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims); *see also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity").

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

To establish a governmental entity's liability for the conduct, plaintiff would have to show his constitutional violations "resulted from (1) an official municipal policy, (2) an unofficial

custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can prove the Scott County Sheriff's Department was liable for its officers' actions.

Plaintiff alleges in a conclusory fashion that "Scott County makes it policy and custom to . . ." and then lists nine events that specifically happened to him when he was in custody and beaten by officers.  A policy however refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016); *see also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). Plaintiff has not cited to or quoted any statement of policy to support his allegations that Scott County has a policy of beating and tasing individuals in the custody of the Scott County Sheriff's Department. His conclusory statements are not enough to assert his right to relief above a speculative level. For this reason, the Court cannot find that plaintiff has alleged a plausible claim that his constitutional violations were caused by an official policy of Scott County or the Scott County Sheriff's Department.

Alternatively, in order to establish a claim of liability based on "custom," the plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the

governmental entity's custom, that is, that the custom was a moving force behind the constitutional violation. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Plaintiff has alleged no facts to support any of these three factors that might establish Scott County's liability based on an unofficial custom.

Finally, to demonstrate deliberate indifference for purposes of failure to train, the plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). Again, plaintiff makes no factual allegations that support the assertion that Scott County was deliberately indifferent in failing to train its employees.

For these reasons, plaintiff has failed to state a plausible claim of constitutional violations against defendants in their official capacities. Because plaintiff is representing himself and because he has made serious allegations of unconstitutional conduct, the Court will allow him to file an amended complaint in accordance with the instructions below.

### Instructions for Filing Amended Complaint

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A). In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. He should then fill out the complaint form in its entirety, and ensure that it is signed. *See* Fed. R. Civ. P. 11(a).

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). It is important that plaintiff allege when this event happened, as stated in Section II, Statement of Claim. In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual

allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. As stated in the discussion above, plaintiff's failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. If plaintiff fails to file an amended complaint on a Court-provided form within twenty-one (21) days in accordance with these instructions, the Court will dismiss this action without prejudice and without further notice to plaintiff.

### Motion to Appoint Counsel

Plaintiff has also filed a motion to appoint counsel. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel.

*Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepayment of fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $44.91 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a copy of the Court's prisoner civil rights complaint form.

- 9 -

**IT IS FURTHER ORDERED** that plaintiff shall have twenty-one (21) days from the date of this Order to file an amended complaint in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that if plaintiff does not file an amended complaint within twenty-one (21) days of the date of this Order, this action will be dismissed without prejudice and without further notice to plaintiff.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED without prejudice**. [ECF No. 4]

Dated this 2nd day of October, 2023.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE