UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RICKEY TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00163-CMS |
| | ) | |
| ANDREW SKINNER, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM, AND ORDER

This matter is before the Court on Defendant Deputy Andrew Skinner,

Lieutenant Robyn Merideth, Seargeant Michael Yaworksi, Deputy Hunter Juden,

and Correctional Officers Zack Stevens and Ryan Skinner's Motion for Summary

Judgment pursuant to Fed. R. Civ. P. 56 (Doc. 70).[1]  This Court GRANTS

Defendants' Motion for Summary Judgment on all of Plaintiff's claims.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff brings this action on a court-provided prisoner civil rights

complaint form pursuant to 42 U.S.C. § 1983. He names as Defendants the Scott

---

[1] These same defendants also filed a Motion to Compel and to Determine the Sufficiency of Request for Admissions Responses. (Doc. 61). Because the Court grants summary judgment to these defendants on all claims, this motion is DENIED as moot.

County Sheriff's Department,[2] Deputy Andrew Skinner, Lieutenant Robyn

Merideth, Sergeant Michael Yaworski, Deputy Hunter Juden, and Correctional

Officers Zack Stevens and Ryan Skinner. He sues all remaining Defendants in both

their individual and official capacities.

**The Allegations in Plaintiff's Complaint**

Plaintiff alleges that, on March 2, 2022, while he was being held in a holding

cell at the Scott County Detention Center, Defendants A. Skinner, Yaworski,

Juden, Stevens, R. Skinner,[3] and Merideth physically assaulted him. (Doc. 6 at 6).

These Defendants woke Plaintiff and dragged him off the top bunk and onto the

bottom bunk. (Doc. 6 at 6). They then began punching Plaintiff and electrocuting

him with their tasers. (Doc. 6 at 6).

Defendants then dragged Plaintiff from the pod into the rotunda. (Doc. 6 at

6).  They continued punching him in his head, face, and back, began kicking him,

and "brutally smashed" his front teeth out of his mouth. (Doc. 6 at 6). Plaintiff was

then dragged down the hallway toward the booking room, where the assault

continued. (Doc. 6 at 6). One deputy twisted Plaintiff's arm behind his back so

---

[2] On November 5, 2024, Senior District Judge Catherine D. Perry entered an order dismissing all of Plaintiff's claims against the Scott County Sheriff's Department. (Doc. 47).

[3] Plaintiff's Amended Complaint refers to "R. Skinner" as "C. Skinner." (Doc. 6). On November 5, 2024, Judge Perry directed the Clerk of Court to "change the docket sheet to replace the name Christoper Skinner with Ryan Skinner", as Plaintiff incorrectly identified Ryan Skinner as Christopher Skinner. (Doc. 46). For clarity, this opinion will refer to that named defendant as "R. Skinner" throughout.

hard while he was placing Plaintiff into a restraint chair that it dislocated his shoulder. (Doc. 6 at 6). While Plaintiff was in the restraint chair, Defendants continued to tase him, causing him to defecate and urinate on himself. (Doc. 6 at 7). Plaintiff was then forced to sit in his feces and urine for many hours. (Doc. 6 at 7).

At some point, EMS was dispatched to the jail to remove the taser prongs. (Doc. 6 at 7). EMS personnel were unable to remove the prongs, so Plaintiff was transported to the Missouri Delta Medical Center. (Doc. 6 at 7). Missouri Delta doctors performed an MRI of Plaintiff's head and another MRI of his shoulder. (Doc. 6 at 7).  After Plaintiff's release from Missouri Delta, he was transported back to the Scott County Jail without any medication for pain relief. (Doc. 6 at 7).

Plaintiff alleges that A. Skinner tased him more than twenty times, punched him repeatedly in the face, and knocked his teeth out. (Doc. 6 at 7-8). He also kicked Plaintiff and hit him with his police baton and pulled Plaintiff's handcuffs up to the back of his head, tearing Plaintiff's chest muscle, rotary cup, and arm ligaments. (Doc. 6 at 7-8). Plaintiff alleges Defendant Juden tased him while he was in the pod, then strapped him into the restraint chair and continued to tase him. (Doc. 6 at 8). Juden also assaulted Plaintiff in his pod, in the hallway, rotunda, and booking area. (Doc. 6 at 8).

3

As to Defendant Stevens, Plaintiff states that he tased him and beat, punched, and kicked him in the pod, rotunda, hallway, and booking area. (Doc. 6 at 8). Stevens initially wore a body camera, but Defendant Juden told Stevens to stop filming. (Doc. 6 at 8). Plaintiff also claims that R. Skinner punched and kicked Plaintiff and forced his handcuffs up causing Plaintiff's shoulder injuries. (Doc. 6 at 8). Finally, Defendants Yaworski and Merideth allegedly tased, punched, and kicked Plaintiff while he was handcuffed. (Doc. 6 at 8).

### Defendants' Motion for Summary Judgment

After discovery was completed, Defendants moved for summary judgment. (Doc. 70). Defendants asserted that summary judgment on all remaining claims was proper because (1) Plaintiff failed to timely exhaust his administrative remedies under PLRA; and (2) the Defendants were entitled to qualified immunity on Plaintiff's excessive force claims. (Doc. 70-71).  Along with its motion and memorandum in support, Defendants filed a Statement of Uncontroverted Material Facts. (Doc. 72).

Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 76) did not specifically identify any fact contested by Plaintiff. Nor did Plaintiff cite any materials in the record to support the factual allegations in his response. Uncontroverted material facts not properly contested are accepted as true for purposes of summary judgment. *See Jones v. United Parcel Services, Inc.*, 461

F.3d 982, 991 (8th Cir. 2006) (finding that district court "properly deemed defendants' statements admitted" when the "plaintiffs failed to provide a pleading in accordance with the rules that controverted any of the movants' facts")

**The Uncontroverted Material Facts**

On March 2, 2022, an inmate informed jail personnel that Plaintiff "broke a metal piece off in shower and has threatened to use it to stab people." (Doc. 72 at 3). When defendants Juden, Stevens, A. Skinner, and R. Skinner approached Plaintiff in his pod, Plaintiff was holding a metal shank over four inches in length, which appeared to have sharp edges. (Doc. 72 at 3). Plaintiff was instructed at least five times to put the shank down over a span of four seconds. (Doc. 72 at 3-4). Because Plaintiff refused to drop the shank, Plaintiff was tased four times over the next minute. (Doc. 72 at 4). The officers then handcuffed Plaintiff, but Plaintiff "used [his] body to push them off of [him] and tensed [his] arm and hands up." (Doc. 72 at 4).

After moving Plaintiff to the hallway, Defendant Juden ordered Plaintiff to sit and "stay down". (Doc. 72 at 5). Instead, Plaintiff attempted to stand up and kick Defendant Skinner. (Doc. 72 at 5). Plaintiff then tried to move away from the officers. (Doc. 72 at 5). Plaintiff was tased once more in the hallway. (Doc. 72 at 5). The officers were unable to remove the final two taser prongs from Plaintiff's body. (Doc. 72 at 5). After Defendant Juden was unable to remove the remaining

two prongs, Juden contacted EMS. (Doc. 72 at 5). The entire incident involving

Plaintiff and Defendants was captured on video. (Doc. 72 at 2-3). Defendants

Merideth and Yaworski were not present during the incident. (Doc. 72 at 2).

Effective October 1, 2021, and at all relevant times regarding the subject

incident on March 2, 2022, the Scott County Jail had a Detainee/Offender

Handbook. (Doc. 72 at 1). Plaintiff had access to the handbook until he was

transferred to Mississippi County jail in June 2022. (Doc. 72 at 1-2). The Scott

County Jail had a portable kiosk available to inmates requesting to file grievances.

(Doc. 72 at 2). Plaintiff did not request access to a kiosk to submit a grievance

during the time he was in isolation. (Doc. 72 at 2). Plaintiff first filed a grievance

regarding alleged excessive force on May 31, 2022, nearly three months after the

incident. (Doc. 72 at 1). Plaintiff did not file an appeal regarding any answer or

lack thereof to his grievance. (Doc. 72 at 2).

## ANALYSIS

### Summary Judgment Standard

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986) (citing Fed. R. Civ. P. 56(c)). A party moving for summary judgment

bears the burden of demonstrating that no genuine issue exists as to any material

fact. *Id.* at 323. A dispute is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party," and a fact is material if it "might

affect the outcome of the suit under the governing law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party can satisfy its burden in

either of two ways: it can produce evidence negating an essential element of the

nonmoving party's case, or it can show that the nonmoving party does not have

enough evidence of an essential element of its claim to carry its ultimate burden of

persuasion at trial." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).

When the moving party meets this burden, "the adverse party 'must set forth

specific facts showing that there is a genuine issue for trial.'" *Liberty Lobby, Inc.*,

477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The "party opposing a properly

supported motion for summary judgment may not rest upon mere allegation or

denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial." *Id.* at 256 (quoting Fed. R. Civ. P. 56(e)). "The evidence of

the non-movant is to be believed, and all justifiable inferences are to be drawn in

his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59

(1970)).

In addition to the requirements of Rule 56, this Court's Local Rule 4.01(E) addresses a non-moving party's duties in opposing a moving party's Statement of Material Facts:

> Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts.  All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Plaintiff's failure to comply with Rule 56(e) and Local Rule 4.01(E) means that all of PRA's uncontroverted material facts supported by the record are deemed admitted. *See United Parcel Services, Inc.*, 461 F.3d at 991. This Court has independently verified that all of Defendants' factual assertions are supported by the attached exhibits and the record.

**The Remaining Defendants are Entitled to Summary Judgment
on Plaintiff's Claims Because Plaintiff Failed to
Exhaust Administrative Remedies under PLRA.**

The Prison Litigation Reform Act (PLRA) provides that a prisoner cannot bring an action under 42 U.S.C. § 1983 without first exhausting available administrative remedies through the prison grievance process. See 42 U.S.C. §

1997e(a). "[T]he PLRA contains, 'its own, textual exception': '[A]n inmate is required to exhaust those, but only those, grievance procedures that are [available, i.e.,] "capable of use" to obtain "some relief for the action complained of."'" *Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Moreover, the exhaustion requirement requires proper exhaustion, which entails completion of the administrative review process in prison in accordance with applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 93–103 (2006).

"[T]he prison's requirements, and not the PLRA, . . . define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Scott County Jail's handbook provides the following grievance process. An inmate is first required to submit "on the proper form to the Shift Supervisor or the Assistant Jail Administrator within 24 hours of the incident which [he is] filing a grievance regarding." (Doc. 72 Ex. A, p. 8). The Shift Supervisor or the Assistant Jail Administrator then has 10 working days upon receipt of the grievance to respond to the inmate with a decision. (Doc. 72 Ex. A., p. 8). After the Shift Supervisor or the Assistant Jail Administrator makes a decision, the following appeals process applies:

> If the inmate is not satisfied with the decision, the inmate may make
> an appeal to the Jail Administrator within 24 hours who shall have ten
> (10) working days upon receipt of the grievance to respond to the
> inmate with a decision.

>   If the inmate is not satisfied with the decision, the inmate may make
>   an appeal to the Chief Deputy within 24 hours who shall have ten (10)
>   working days upon receipt of the grievance to respond to the inmate
>   with a decision.
>   If the inmate is not satisfied with the decision, the inmate may make
>   an appeal to the Sheriff or his designee within 24 hours who shall
>   have ten (10) working days upon receipt of the grievance to respond
>   to the inmate with a decision. This is the final level of complaint[.]

(Doc. 72 Ex. A, p. 8).

Plaintiff failed to timely file a grievance. An inmate is required to submit a grievance "on the proper form to the Shift Supervisor or the Assistant Jail Administrator within 24 hours of the incident which [he is] filing a grievance regarding." (Doc. 72 Ex. A, p. 8).  The relevant incident took place on March 2, 2022. (Doc. 72 at 3). Plaintiff did not file his grievance until May 31, 2022. (Doc. 72 at 1). Moreover, Plaintiff did not file an appeal regarding any answer or lack thereof to his grievance. (Doc. 72 at 2). Because Plaintiff did not exhaust the grievance procedures set forth in the Scott County Jail's handbook, Plaintiff failed to exhaust his administrative remedies under PLRA. The Court grants summary judgment in favor of all remaining Defendants on this ground.

### Defendants are Entitled to Summary Judgment on the Ground of Qualified Immunity.

In the alternative, Defendants also argue they are entitled to summary judgment because of qualified immunity. "Qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" *Pearson v. Callahan*, 555 U.S.

223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), which

should be resolved "at the earliest possible stage in litigation," *Hunter v. Bryant*,

502 U.S. 224, 227 (1991) (per curiam). "An officer is entitled to qualified

immunity unless: '(1) he violated a constitutional right, and (2) that constitutional

right was clearly established so that a reasonable officer would know of the right at

the time of the alleged violation.'" *Klum v. City of Davenport*, 145 F.4th 907, 912

(8th Cir. 2025) (quoting *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982 (8th

Cir. 2019)). A court has discretion to resolve either prong of the analysis first.

*Pearson*, 555 U.S. at 236.

"Qualified immunity attaches when an official's conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *White v. Pauly*, 580 U.S. 73, 78–79, (2017) (per curiam)

(internal quotation marks omitted). "Because the focus is on whether the officer

had fair notice that her conduct was unlawful, reasonableness is judged against the

backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194,

198 (2004) (per curiam). Although there does not need to be a case "directly on

point for a right to be clearly established, existing precedent must have placed the

statutory or constitutional question beyond debate." *White*, 580 U.S. at 79

(alterations omitted). "Use of excessive force is an area of the law 'in which the

result depends very much on the facts of each case,' and thus police officers are

11

entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104-105 (2018) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)). Thus, a plaintiff must identify controlling authority or "a robust 'consensus of cases of persuasive authority'" placing the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Plaintiff does not identify any cases that would support his apparent argument that his tasing violated any clearly established constitutional right to be free from excessive force. And there are "numerous [Eighth Circuit] cases permitting officers to use tasers on noncompliant, violent suspects." *Franklin v. Franklin County, Ark.*, 956 F.3d 1060, 1062 (8th Cir. 2020). *See Brossart v. Janke*, 859 F.3d 616, 625 (8th Cir. 2017); *Zubrod v. Hoch*, 907 F.3d 568, 572, 580 (8th Cir. 2018). In fact, the Eighth Circuit has found it reasonable "for officers to use tasers and their own body weight to subdue combative jail detainees, apparently under the influence of drugs, who resist officer efforts to move them." *Franklin*, 956 F.3d at 625 (citing *Ryan v. Armstrong*, 850 F.3d 419, 422–24, 427 (8th Cir. 2017)).

Here, defendants Juden, Stevens, A. Skinner, and R. Skinner approached Plaintiff while he was holding a metal shank over four inches in length, which appeared to have sharp edges. (Doc. 72 at 3). Plaintiff was instructed at least five

times to put the shank down over a span of four seconds. (Doc. 72 at 3-4). Because

Plaintiff refused to drop the shank, Plaintiff was tased four times over the next

minute. (Doc. 72 at 4). The officers could have reasonably believed that Plaintiff

posed a threat to them, himself, or others, and therefore reasonably believed that

the use of a taser was necessary to subdue Plaintiff. *See Carpenter v. Gage*, 686

F.3d 644, 649 (8th Cir. 2012) (holding that it was not unreasonable for an officer to

use his taser on an individual lying on the ground who had refused officers' orders

to present his hands for cuffing). As in the cases previously cited, the scene here

"was a tumultuous one involving seemingly aggressive and noncompliant

behavior, circumstances which [the Eighth Circuit has] previously held rendered

officers' uses of tasers reasonable." *Rudley v. Little Rock Police Dep't*, 935 F.3d

651, 654 (8th Cir. 2019).

The same goes for Plaintiff's tasing when he attempted to kick Defendant

Skinner. (Doc. 72 at 5). The Eighth Circuit has "allowed the use of tasers on

detainees in handcuffs in appropriate circumstances." *Franklin*, 956 F.3d at 1062.

In short, Plaintiff has failed to carry his burden of demonstrating that his

tasing violated any clearly established constitutional right to be free from excessive

force. *Rudley*, 935 F.3d at 655 (affirming grant of qualified immunity to officers

because plaintiffs "cite[d] no case holding that the use of a similar degree of force

was unreasonable in circumstances similar to those here"). Summary judgment is

proper for the remaining Defendants on this ground.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 70) is **GRANTED.**

Defendants' Motion to Compel and Motion to Determine the Sufficiency of

Request for Admissions Responses (Doc. 61) is **DENIED** as moot.  An appropriate

Judgment shall accompany this Opinion, Memorandum, and Order.

Dated this 11th day of February 2025.

_____

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE